REID, Judge.
Steve A. Campo instituted proceedings against the East Baton Rouge Parish School Board on August 27, 1968, seeking to be reinstated to the position of band director at the high school level and to be reimbursed for any loss of pay he might have suffered as a result of the School Board’s actions.
The defendant School Board having failed to file an answer or other pleadings, on February 11, 1969, a preliminary default was entered, and on April 3, 1969, judgment was rendered in favor of plaintiff, Steve A. Campo, and against the East Baton Rouge Parish School Board, ordering' that plaintiff be reinstated to the position of band director at the high school level in the East Baton Rouge Parish school system and that he be reimbursed for any and all loss of pay, together with any increases or other emoluments to which he may be entitled, from the effective date of his transfer to a position on the junior high level until he is reinstated to the position of band director at the high school level and given the pay and emoluments to which he would be entitled in such position, and further ordering defendant to pay all costs of court.
On April 8, 1969, the defendant School Board filed an application for a new trial on the grounds that the default judgment was erroneously rendered, the plaintiff having failed to establish a prima facie case as required by Article 1702 of the Louisiana Code of Civil Procedure. This matter was tried on May 12, 1969, at which time the Court overruled defendant’s motion for a new trial. Judgment was read and signed May 14, 1969.
On May IS, 1969, counsel for defendant filed an exception of no cause of action on the grounds that plaintiff’s petition contained no allegation whatsoever that the tenure hearing held by the School Board was not conducted entirely in accordance with the provisions of LSA-R.S. 17:443. This exception was submitted to the Court without argument and for oral reasons assigned on May 19, 1969, the exception was overruled.
An order of suspensive appeal from the judgments of April 3, 1969 and May 12, 1969, was entered on May 20, 1969.
Counsel for the East Baton Rouge Parish School Board has filed with this Court a peremptory exception of no cause of action on the same grounds as in the exception before the Trial Court, that is, that plaintiff’s petition contained no allegation that the tenure hearing was not conducted entirely in accordance with the provisions of LSA-R.S. 17:443.
Defendant-Appellant alleges four specifications of error, to-wit: (1) the Trial Court erred in rendering judgment by default without having actually read or heard any evidence whatsoever in proof of the plaintiff’s demands; (2) the Trial Court erred in not granting defendant’s timely application for a new trial either on the basis that (a) the judgment was clearly contrary to the law and the evidence, or (b) substantial justice would have been done the parties by granting the new trial; (3) the Trial Court erred in overruling defendant’s exception of no cause of action even after judgment; and (4) the Trial Court erred in granting judgment to the plaintiff when the record reflects that defendant fully complied with the Tenure Act and that its decision was based on substantial evidence and was not arbitrary, capricious, unreasonable, or an abuse of discretion.
Plaintiff, Steve A. Campo, is a permanent teacher in the East Baton Rouge Parish school system and served as band director at Glen Oaks Junior High School from 1963 through the 1966-67 school year. By letter dated November 7, 1967, the plaintiff was notified by Mr. Charles E. Lee, Supervisor of Personnel Services, that he was to be transferred from Glen *69 Oaks Junior High School to Glen Oaks Senior High School as Band Director for the remainder of the 1967-68 school session, effective November 16, 1967. He was further informed that he would be notified of final approval by the East Baton Rouge Parish School Board at a later date. On November 17, 1967, he was advised by letter from Mr. C. J. Gilbert, Director of Personnel, that at a recent meeting of the East Baton Rouge Parish School Board his reassignment was approved as Band Director for Glen Oaks Senior High School for the remainder of the 1967-68 school session, effective November IS, 1967. This transfer was made in order to fill a vacancy which had occurred at Glen Oaks Senior High School created by the suspension and subsequent resignation of the former band director.
It appears that at some time during the school year the Principal of Glen Oaks Senior High School, Mr. Vernon Stock-well, and the Supervisor of Music for the East Baton Rouge Parish School system, Mr. Harry Evans, were dissatisfied with the way in which plaintiff was conducting the band program at Glen Oaks Senior High School, and on April 19, 1968, Mr. Lee, Supervisor of Personnel Services, Mr. Aertker, Superintendent for the East Baton Rouge Parish School Board, Mr. Evans, Supervisor of Music, and Mr. Stockwell, Principal, met to discuss the band program and Mr. Stockwell stated that Mr. Campo was having problems in his relationships with the students, parents, faculty, and school administrators. Mr. Evans stated that he had been observing the music program and he concurred with Mr. Stock-well. It was suggested that they have a conference with Mr. Campo on April 22, 1968.
The conference was held on April 22, 1968, and at that time it was stated to Mr. Campo that Mr. Stockwell was dissatisfied and felt that the band program was not a success. It was suggested to Mr. Campo that he give consideration to the transfer to the junior high school program, or if he did not improve he would face dismissal at a later date. Mr. Campo was advised that he should give the matter serious consideration, and he called back several days later and said that he wanted to remain at Glen Oaks High School.
There was a letter to Mr. Campo from Mr. Stockwell, the Principal, dated May 8, 1968, stating in detail the things he felt must be corrected; a letter to Mr. Aert-ker, the Superintendent, from Mr. Stock-well, dated May 27, 1968, in which he described certain incidences involving Mr. Campo and his band program; and two letters on June 7, 1968, from Mr. Stock-well to Mr. Aertker listing things about Mr. Campo with which he was dissatisfied.
On May IS, 1968, Mr. Campo was advised by Mr. Aertker that he was going to recommend to the School Board that he be returned to his position as Band Director at Glen Oaks Junior High School for the 1968-69 school session commencing September 3, 1968, and Mr. Campo was requested to answer by return mail whether or not he would accept the assignment.
By letter dated June 27, 1968, Mr. Cam-po advised Mr. Aertker that the letter of November 7, 1967, from Mr. Lee, did not state that his transfer from Glen Oaks Junior High School to Glen Oaks Senior High School was a temporary reassignment, and that his position was that any transfer offered to him from the School Board other than a Triple A high school band program at matching salary would be considered a demotion and he did not choose to be demoted at the present time.
By Registered Mail on July 8, 1968, Mr. Campo was notified by the Superintendent that he would recommend to the School Board at its meeting on Thursday, July 18, 1968, that it call a hearing in accordance with the Teacher Tenure Law to consider Mr. Campo’s dismissal as a teacher in the East Baton Rouge Parish schools on grounds of incompetency and willful neglect of duty, and enclosed a copy of his let *70 ter to the School Board in which he listed the following charges:
“A. INCOMPETENCY in the following respects:
(1) Inability to maintain discipline in his classroom.
(2) Inability to communicate with his students.
(3) Inability to secure cooperation and respect of pupils.
(4) Inability to secure cooperation and respect of fellow faculty members.
(5) Inability to secure cooperation and respect of parents.
(6) Inability to profit from suggestions of supervisory personnel.
(7) Lack of knowledge of child development and learning.
(8) Inability to maintain good public relations with patrons of his school.
(9) Lack of emotional stability.
(10) Inability to plan and organize his program in a proper and adequate manner.
(11) Lack of dependability and responsibility with regard to carrying out the administrative duties necessary in his position, as Band Director.
“B. WILLFUL NEGLECT OF DUTY in the following respects:
(1) Failure and refusal to carry out directions of supervisory personnel and principal.
(2) Continuing to consistently send his students to the library two or three days a week after having been repeatedly told not to do so by his principal.
(3) Leaving specifically assigned duties, such as library duty, without permission.
(4) Requiring or permitting his students to engage in fund raising for a trip to the Music Festival at Six Flags in Dallas by selling car-wash tickets after having been specifically told by his principal that the students were not to engage in any fund raising.
(5) Calling meetings of parents without having authorization from the principal to call such meetings or to use school facilities for such meetings.
(6) Failure to submit an inventory of his band instruments as directed by memorandum of Supervisor of Music of February 14, 1968.
(7) Soliciting funds from private business establishment for the purpose of purchasing trophy awards for members of his band without having the permission or approval of his principal to either solicit funds from private citizens or to purchase the trophies.
(8) Failure to turn in his school keys after having been verbally requested to do so by his principal and further refusal to turn in said keys after having been instructed in writing to do so.
(9) Failure to tag and store his musical instruments needing repairs after having been specifically instructed to do so by the supervisor of music.
(10) Failure to attend general assemblies without having specific permission from the principal to be absent.
(11) Disregarding the instructions of the principal in continuing to bring his fifth period general music class to the library after having been specifically instructed by the principal not to do so.
(12) After being notified by letter of May IS, 1968, that the Superintendent was transferring him from Glen Oaks High School to Glen Oaks Junior High School and requesting notification by return mail of whether or not he would accept this assignment, the teacher failed and refused for over a month to *71 advise the Superintendent one way or another.”
The School Board, at its meeting on July 18, 1968, resolved in accordance with LSA-R.S. 17:443, that a hearing be held on August 21, 1968, at 3:00 P.M., to consider the charges against Steve A. Campo and to remove him from his position as a teacher in the public schools of East Baton Rouge Parish on the grounds of incompetency and willful neglect of duty, and set forth the same charges as quoted above. The resolution further provided that Mr. Campo was to be so advised in writing, and was to be advised also that the meeting may either be public or private, at his option, and that he might be represented by counsel and present any witnesses he desired in his behalf.
Mr. Campo was so notified by Registered Mail, with a return receipt requested, on July 19, 1968. Attached to the letter was a copy of the Board’s resolution setting forth the charges.
The hearing on August 21, 1968 lasted several hours, and was continued and completed on August 23, 1968. The hearing was public and plaintiff was represented by counsel who cross examined the witnesses testifying for the School Board. Witnesses for the School Board were Mr. Aetker, the Superintendent, Mr. Stockwell, the Principal, and Mr. Evans, the Music Supervisor. The witnesses for plaintiff were plaintiff and Mr. Nelson Clothier, Principal of Glen Oaks Junior High School, and Mr. Lee J. Fortier, Jr., Band Director at Broadmoor Junior High School.
At the conclusion of the hearing the School Board went into executive session, with attorneys for both sides being asked to attend, and after the executive session the Board reconvened and unanimously voted to find plaintiff “guilty of incompetency and willful neglect of duty at the senior high school level, and. does hereby assign Mr. Campo as band director at Glen Oaks Junior High School for the 1968-69 session.”
According to the brief of the attorney for the School Board, plaintiff was at the time of the writing of his brief, still employed by the East Baton Rouge Parish School Board as Band Director at Glen Oaks Junior High School.
It was from the August 21, 1968 hearing that plaintiff instituted proceedings against the East Baton Rouge Parish School Board.
Before going into the merits of this case, it is necessary to point out that LSA-R.S. 17:443 sets forth the procedure for removal of teachers under the Tenure Act, and provides in pertinent part as follows:
“If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of wilful neglect of duty, or of incompetency, or dishonesty, * * * and ordered removed from office, or disciplined by the board, the teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board.”
This provides not for a trial for removal but for a review of the action by the school board. In other words, the District Court in this particular case acts as an appellate court in that it reviews the action of the school board. This point is especially important in the case before us in view of the first specification of error alleged by the defendant, that is, that the trial Court erred in rendering judgment of default without having actually read or heard any evidence whatsoever in proof of plaintiff’s demands, and also in view of the second specification of error, that the court erred *72 in not granting the application for a new trial in that (a) the judgment was clearly contrary to the law and the evidence, or (b) substantial justice would have been done the parties by granting the new trial.
The record shows that on February 11, 1969, counsel for the plaintiff entered a preliminary default. On April 3, 1969, the default was confirmed and there was judgment rendered in favor of plaintiff and against the defendant School Board, ordering that plaintiff be reinstated to the position of band director at the high school level in the East Baton Rouge Parish school system, and that he be reimbursed for any and all loss of pay. On April 8, 1969, an application for new trial was filed, in which it was alleged that the judgment did not conform to the requirements of the Louisiana Code of Civil Procedure, particularly Article 1702, which provides that a judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case.
In its application for a new trial, the defendant School Board alleges that the record in this case shows the plaintiff introduced no evidence in proof of his demands except two letters, both from plaintiff’s attorney to defendant’s attorney, one dated March 4, 1969, in which the attorney for plaintiff informed the attorney for defendant that he had entered a preliminary default on February 11, 1969, and that unless pleadings were filed on or prior to March 12, his preliminary default would be confirmed, and the second letter dated March 21, 1969, in which plaintiff’s attorney informed defendant’s attorney that he had heard nothing from him in more than two weeks and insisted that an answer be filed on or before April 1, 1969, and he also introduced the sealed and still unopened transcript of the tenure hearing held by the School Board and recorded by Janet Parker the Court Reporter. Counsel for defendant points out that since the transcript was still sealed and unopened, it could not have been considered by the Trial Court prior to rendition of the default judgment, and, therefore, the plaintiff had failed to establish a prima facie case as required by Article 1702, in that no proof whatsoever was considered by the Court as the Court had not had an opportunity to read the sealed and unopened transcript of the said tenure hearing. An examination of the record discloses that these facts are correct, that the plaintiff did not testify, nor did any of his witnesses, and that the transcript was sealed and unopened.
Counsel for plaintiff in his brief, while conceding this, states that what the defendant-appellant overlooked was that counsel for plaintiff-appellee had a complete copy of the proceedings, including a copy of the transcript and all offerings, at the time the preliminary default was confirmed, and read from the same to the trial Judge pointing out specific acts complained of and the portions of the record which supported the plaintiff’s complaint, as well as the rules and regulations of the East Baton Rouge Parish School Board offered in support thereof. While not questioning the statement in plaintiff’s brief, the record nevertheless fails to show that there was any evidence whatsoever presented to the trial Judge other than the introduction of the two letters and the sealed transcript.
In support of defendant’s position counsel cites the cases of Dreher v. Guaranty Bond and Finance Co., 1936, 184 La. 197, 165 So. 711; Romero v. Melancon, 1954, La.App., 72 So.2d 570; and Pepe v. Tournage, 1961, La.App., 128 So.2d 56.
In the Pepe case, supra, this Court held as follows:
“Under the law of this state, the plaintiff who seeks a judgment by default must prove the essential allegations of his demand as fully as if they had been specially denied for, in order to recover, he must make his claim certain. Code of Practice, Article 312; Dreher v. *73 Guaranty Bond & Finance Co., 184 La. 197, 165 So. 711; Item Co. v. St. Tammany Hotel, La.App., 175 So. 421; Romero v. Melancon, La.App., 72 So.2d 570.”
It is the position of this Court that the defendant is correct in that the judgment by default was not granted in accordance with the. jurisprudence and the Code of Civil Procedure articles pertinent and that, therefore, it should not have been rendered.
For the above and foregoing reasons, it is hereby ordered that the judgment of the District Court on confirmation of default be and the same is hereby reversed and this matter remanded to the Court for trial on the exception and on the merits, costs of this appeal to be borne by the ap-pellee, the remaining costs to await the outcome of this suit.
Reversed and remanded.